## Clark, Appellant, *v.* Perry & Fox.

Where a contract was rescinded by a memorandum in writing, which made no mention of money already paid on the contract, parol evidence was admitted to prove that the party who had paid the same was not to receive it back.

It is a general rule that admissions or declarations voluntarily made by a party, are always admissible in evidence against him.

APPEAL from the circuit court of Hinds county.

This is *assumpsit*, brought by the appellant, Clark, against Alfred Perry, Burwell Fox, and Edwin Perry, on their promissory note for $80 42.

Defendants plead *non assumpsit* and payment, and also gave notice that they would offer in evidence as a set-off the following account.

Wm. Clark,

| 1836. | | To Alfred Perry & Burwell Fox, | *Dr.* | |
|---|---|---|---|---|
| May 2, | To this sum, $3,000, Interest thereon, $480, | | $3,480 | 00 |
| June 9, | To this sum, $1,000, Interest thereon, $160, | | 1,160 | 00 |
| 1837. | | | | |
| March 4, | To this sum, $4,759, Interest thereon, $380, | | 5,139 | 00 |
| | | | $9,779 | 00 |

A trial was had and verdict for the defendants.

The case was tried at the same time with another of William Clark, against Alfred Perry, Burwell Fox, Calvin Perry and Edwin Perry; and also another case of Alfred Perry and Burwell Fox, against William Clark, which it is necessary to join in this abstract, as one bill of exceptions was taken to be used in all the cases, and cannot be well understood without including all the cases in one abstract.

In the first case Clark declared in *assumpsit* on a promissory note for $4,768 25.

Pleas and notice as stated in the above abstract, in Clark *v.* Perry & Fox.

24½

Jury to try the issue, and verdict for the defendants.

In the other case Perry & Fox declare against Clark, in *as-sumpsit*, for money had and received, money lent and advanced, money paid, laid out and expended.

Plea, *non assumpsit.* Jury, and verdict for plaintiffs, for $4,794 79.

In each of the three cases, judgment was entered according to the verdict.

The bill of exceptions shows, that on the trial of these cases Perry & Fox produced and offered to read to the jury a paper admitted by Clark to be genuine, in the following words:—

"Society Ridge, May 2nd, 1836.

" Received of A. Perry, three thousand dollars, the amount to be paid in cash by the articles of agreement between us, made and entered into this day."            " WILLIAM CLARK."

Clark objected to the receipt as evidence; the objection overruled.

Perry & Fox then offered to read to the jury, their note to Clark for $1,000, payable 1st October, 1836.    Clark admitted the body of the note to be in his hand writing, but objected to it as evidence: objection overruled.

Perry & Fox then produced and offered to read in evidence Clark's receipt to them for $4,759, dated 1st March, 1839.    Its genuineness was admitted, but it was objected to as evidence: objection overruled.

Clark admitted that the sums mentioned in said receipts and note, had been paid to him as part of purchase money due him by Perry & Fox.

Perry & Fox then produced and read a writing in these words: " Copy compromise with Docts. Cotton and Stokes, in relation to all matters between Perry & Fox, and myself.    They are to give me first note, due 1st October, 1837, for $4,166, Interest from 1st March last.    Second do. due 1st March, 1838, for $6,666. ·Third do. due 1839, for $6,666.    Fourth do. due, for $4,316 15, to draw ten per cent. from 1st May last."

After reading this writing to the jury, Perry & Fox introduced Dr. Cotton as a witness, who stated that he, Cotton, assisted in effecting a compromise between Perry & Fox and Clark, that

whether Clark was or was not to refund to Perry & Fox money, was not the subject of negotiation; that nothing was said with respect to .money paid by Clark to Perry & Fox, upon or in part fulfilment of their contract. That the preliminaries of the compromise having been adjusted, according to the paper read, Perry & Fox, and Clark afterwards carried the agreement into execution according to the written memorandum, with some slight and immaterial variations afterwards agreed on between them in parol. That the written agreement included the whole of the matters agreed on, with the unimportant variations before alluded to. That Clark refused to have any communication with Perry & Fox, relative to said difference between them, and that the whole communications were between said Clark and Stokes, Whitfield and the witness, the three last acting voluntarily as neighbors and mutual friends to the principal parties.

Perry & Fox then introduced Dr. Stokes, who corroborated Cotton. They then introduced Mr. Whitfield. He stated that Perry & Fox having purchased land and negroes of Clark to about $93,000, had, to secure payment, executed a deed of trust, witness being trustee. Perry & Fox had filed a bill in chancery to enjoin execution of trust, and the injunction being set aside, he, the witness, went to Clark's house for instructions as to proceeding to sell under the deed. Clark had given him instructions, the residue of the debt being about $60,000. Before he left Clark's house, Clark informed him that he had made certain offers to Perry & Fox for the adjustment of their business, which had not been by them acceded to; witness did not state what the propositions were which Fox said he had made. Witness left Clark's and met with ,Dr. Cotton and Stokes, and informed them what Clark had said. They said if Perry & Fox had understood the propositions, they would have acceded to them.' Witnesses Stokes and Cotton determined to ascertain whether Clark. would still make the arrangement. Their motive was that if Clark proceeded to enforce the deed of trust, every thing Perry & Fox had would be sold for the debt, and a heavy sum still left hanging over them. They went to see Clark and told him they had come to see if he was willing still to make a compromise with Perry & Fox, so as to let them save any thing. Clark replied they had given him

much trouble, he now had them in a situation in which they could not do so further, he had lost all confidence in them, and was unwilling to make any arrangement by which he could be involved in further litigation; at any rate, he could not now make an arrangement as favorable as his former propositions. After some further conversation, the written terms of compromise were drawn up by Clark, which they recommended, and the compromise took effect with some slight and unimportant variations afterwards agreed on by the parties. That the money for which the first receipt had been executed, had been paid by Perry, in bank notes, at the time of their original purchase from Clark. He also knew a payment of $3,000 had been made to Clark on the purchase, and that he knew of no more, and that at no time during the negotiation, were the payments made to Clark, spoken of. Their attention was solely directed to the extinguishment of the debt due him by Perry & Fox, and to relieve them from the contract, which had turned out to be a very bad one. Property had fallen very much, that Clark, after his sale to Perry & Fox, had bought the place spoken of, as the Moore place, at twenty-nine dollars per acre, that the quantity was about seven hundred acres, and Perry & Fox agreed to take it from Clark at the same price, although it would not then have commanded so much. That the cotton crop on the land which Clark received on the compromise exceeded in quantity the crop which Perry & Fox got when they bought of Clark. No personal communication took place between Clark and Perry & Fox about the compromise. All was through the mediation of witness, and Cotton and Stokes.

The foregoing being all the evidence given by Perry & Fox, Clark also moved the court to instruct the jury that Perry & Fox had given no evidence conducing to prove a demand on Clark. Motion overruled. Clark then proved by Dr. Dulaney, that at a period when he supposed the negotiation between Perry & Fox and Clark, respecting the compromise, had been brought to a close, he, the witness, was at the house of Perry, and asked him if they had effected a compromise. He was answered by Perry that he did not certainly know, as Cotton, Stokes and Whitfield had not reported to him, but he, Perry, expected it was effected. Perry then said, Fox and himself would lose upon the whole trans-

[Clark, Appellant, *v.* Perry & Fox.]

action, and amongst other things informed him that they were to lose the payments made by them to Clark on the purchase. The attorney for Perry & Fox moved the court to rule out and exclude the whole of Dulaney's evidence. It was so done. Clark then introduced sundry witnesses, and by them offered to prove, and would have proved, that before the consummation of the compromise, and after Perry & Fox in conversations respecting the same stated and admitted that by the compromise they were to lose, and had given up and lost amongst other things the sums paid by them to Clark, upon the purchase. The giving which evidence, Perry & Fox, by attorney, opposed, on the ground that it was to add to the written agreement. The court rejected the evidence, and refused to permit Clark to prove any admission, or declaration of Perry & Fox, or either of them, that he was to refund nothing. Clark gave in evidence the notes sued on, and the deed of trust before alluded to.

This being the whole evidence, Perry & Fox, by attorney, moved the court to instruct the jury that upon the recision or doing away of a contract, the party having paid money under a contract was entitled to recover it back, unless it was otherwise stipulated. Clark opposed the instruction, but it was given. Verdicts having been rendered, a new trial was moved for : Because

1. Verdicts without evidence.

2. Verdicts against evidence.

3. The court erred in the several opinions and decisions before stated.

Motions overruled, and judgments; and appeals to reverse them.

Holt, for appellant.

Admissions of the parties to the record, are always admissible, 2 Starkie on Evid. 30.

" Parol evidence may be admitted, to establish an independent fact, or to prove a collateral agreement incidentally connected with the stipulations of a deed or other written contract." 15 Mass. Rep. 86, 87.

The rule which excludes parol evidence, does not apply where a mere memorandum has been made in writing, preparatory to

an agreement, but which has not been signed as an agreement. 2 Starkie's Evid. 81, 82.

Mayes on the same side.

Hughes, *contra.*

It is insisted, 1. That the judgment should be reversed, because there was no bill of particulars filed with the declaration.

2. Because the court, in the case of Clark *v.* Perry *et al.* in the court below, were permitted to give evidence of a claim for set-off between parties different from plaintiff and defendant.

3. Because the court refused to permit the defendant, Clark, in the case of Perry & Fox, in the court below, to give evidence of admissions, before and after the making the agreement in the record referred to, by Perry & Fox, that they were to lose the money which they had paid on the agreement, the subject of the compromise.

4. That there should have been no recovery in the court below, because there was no recision of the agreement upon which the money was paid, which is now sought to be recovered.

5. The court erred in instructing as asked for by Perry & Fox, the plaintiffs in this suit in the court below, and in not giving the instruction asked for by Clark.

To these we reply in their order.

First and Second. These questions cannot be made, because they were not made in the court below.

3. The court did right, because the admissions proposed and offered to be proven, did not show an agreement between the parties, but the construction which one of them might put on the agreement. The agreement, when made, showed no such agreement as that which was proposed to be proven by the admissions; but, on the contrary, it was expressly proven that nothing was said on that subject. The admissions proposed were not a part of the *res gesta*, and were properly rejected.

4. There was a recision. It is true, the term recision is no where mentioned in the proof, but all the facts which constitute a recision are proven.

5. The court properly instructed the jury. The law is, that where an agreement is rescinded the purchaser may recover the

[Clark, Appellant, *v.* Perry & Fox.]

money which has been paid on the agreement, unless it be stipulated to the contrary.    See 5 Johnson's Reports, 84; 12 Johnson's Reports, 273.

The counsel for plaintiff in error also insist that the court erred in refusing to instruct the jury that the plaintiffs below had produced no evidence tending to show that a demand of the money sued for was made before suit brought.

To this we answer that it was not necessary to make such demand.    12 John. Rep. 273, 274.

Mr. Justice TROTTER delivered the opinion of the court.

This was an action of assumpsit upon a promissory note.    The appellees plead non-assumpsit and payment.    There was a verdict and judgment for them upon these issues.    Several errors have been assigned, all of which, however, resolved themselves into one question, which is, whether Perry & Fox were entitled to the sets-off which were admitted by the court below?    This question depends upon the effect of the agreement which is shown by the record.    Clark proposed to prove, by sundry witnesses who were brought forward for this purpose, that *before* the consummation of the compromise, *and after*, Perry & Fox, in conversation, stated and admitted " that they were to lose, and by the compromise had given up and lost, amongst other things, the sums paid by them to Clark upon the purchase."    This testimony was rejected by the court, and this is the material ground of objection to the judgment.    It has been urged in support of the opinion of the court below, that the testimony of these witnesses was inadmissible, because it varied the terms of the written agreement.    To this it might be sufficient to reply, that, properly speaking, there is no definite contract between the parties. There is none save the memorandum, and this was no more than a proposition submitted by the gentlemen whose names are subscribed to it as the mutual friends of each.    It might not be acceded to, and it appears from the evidence that when it was adopted it was done with variations of the terms it contained.— Of itself, it furnishes no evidence for or against either party, and required of necessity, from the nature of the thing, extrinsic proof to make it binding.    And accordingly, the appellees intro-

duced witnesses to prove other facts besides those which are contained in the paper. If this might be done, surely it was competent for the appellant likewise to prove other terms or conditions of the compromise which did not contradict the memorandum. If it be true, as insisted in the argument, that this paper was evidence of a recision of the original contract, it is merely an inference of the law that the appellant was to refund the money; and certainly it was competent to him to repel that inference by the fact that the appellees had agreed to lose it. This he proposed to do, by proving the admissions of the appellees at various times before and after the consummation of the compromise, that such was the case. It is a general rule, that admissions or declarations voluntarily made by a party, are always admissible in evidence against him. 1 Starkie, 61. This admission does not contradict the terms of compromise contained in the memorandum, for that paper is entirely silent on this subject, nor is it at all inconsistent with any one stipulation in it. The case at bar then is that of a party seeking to recover money, to which, by his own repeated and voluntary admissions, he has no title. That such admissions are competent evidence, appears to us to be a proposition too plain to require comment. The judgment must, therefore, be reversed, and the cause remanded, and a *venire de novo* awarded.